UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
UNITED STATES OF AMERICA,               :
                                        :    04 Cr. 1110 (DLC)
            -v-                         :
                                        :
ANGELO DIPIETRO,                        :    OPINION & ORDER
     a/k/a "Fat Angelo,"                :
                Defendant.              :
                                        :
----------------------------------------X

Appearances:

For United States of America:

Jennifer G. Rodgers
Assistant United States Attorney
U.S. Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Pro Se Defendant:

Angelo DiPietro
USP Allenwood
P.O. Box 3000
White Deer, Pennsylvania 17887


DENISE COTE, District Judge:

      Angelo DiPietro ("DiPietro") has filed a second motion for

a new trial pursuant to Rule 33, Fed. R. Crim. P.  DiPietro was

one of six defendants convicted of racketeering charges, among

other crimes, following a three-and-a-half-month trial.  For the

following reasons, his motion is denied.

BACKGROUND

DiPietro's motion is largely based on events that occurred in a related prosecution in which he was charged with extortion offenses and loansharking.  DiPietro was arrested on those charges on February 4, 2004 and the indictment was assigned to the Honorable Shirley Wohl Kram (the "SWK case").  DiPietro was convicted by a jury on all counts in the SWK case on July 12, 2005.

Meanwhile, DiPietro was arrested in October 2004 on the charges in this case (the "Racketeering case").  Six of the defendants in the Racketeering case, including DiPietro, proceeded to trial in September 2005, about two months after the jury's verdict in the SWK case.  The defendants in the Racketeering case who proceeded to trial constituted the management of an organized crime ring that ran gambling operations in Queens, the Bronx, and Westchester (the "Rudaj Organization" or "Organization").  On January 4, 2006, the jury found all six defendants guilty of various crimes, including racketeering, gambling, and firearms charges.

DiPietro appealed both convictions and filed a motion for a new trial in both cases.  The convictions have been affirmed and the new trial motions were denied.  Judge Kram denied DiPietro's motions for a judgment of acquittal and for a new trial on August 5, 2005.  United States v. DiPietro, No. 02 Cr.

1237(SWK), 2005 WL 1863817 (S.D.N.Y. Aug. 5, 2005).  The Court

of Appeals affirmed DiPietro's conviction in the SWK case on

April 22, 2008.  <u>United States v. Genua</u>, 274 Fed.Appx. 53

(2d Cir. 2008).  DiPietro's first motion for a new trial in the

Racketeering case was denied on October 23, 2007, <u>United States

v. DiPietro</u>, No. 04 Cr. 1110(DLC), 2007 WL 3120902 (S.D.N.Y.

Oct. 23, 2007), and his motion for reconsideration was denied on

November 1, 2007.  The Court of Appeals affirmed this Court's

denial of DiPietro's first Rule 33 motion on May 21, 2008.

<u>United States v. DiPietro</u>, 278 Fed.Appx. 60 (2d Cir. 2008).  The

Court of Appeals affirmed his conviction in the Racketeering

case on June 11, 2009 in an opinion and accompanying summary

order.  <u>United States v. Ivezaj</u>, 568 F.3d 88 (2d Cir. 2009);

<u>United States v. Ivezaj</u>, No. 06-3112-cr, 2009 WL 1636018 (2d

Cir. June 11, 2009) (summary order).

     DiPietro's current motion relates in part to transcripts

and documents sealed in the SWK case.  On November 2, 2006,

Judge Kram ordered that sealed transcripts in the SWK case be

unsealed so that counsel for the Government and DiPietro could

use them to frame arguments in the appeal in the SWK case.

Judge Kram also ordered defendants to identify any other

documents that they wished unsealed.  On August 18, 2008,

DiPietro requested that Judge Kram unseal all documents filed in

the SWK case.  On December 23, 2008, the Government consented to

the unsealing of all but three documents that appear on the docket:  Documents 139, 145, and 152.

On March 24, 2009, Judge Kram granted DiPietro's motion in part and unsealed all of the docket entries and filed documents, with the exception of the three documents identified by the Government.  DiPietro v. United States, No. 02 Cr. 1237-01(SWK), 2009 WL 801609, at *5 (S.D.N.Y. Mar. 24, 2009).  Document 139 is described in Judge Kram's opinion as an ex parte letter regarding potential Giglio material.  Id. at *3 (citing Giglio v. United States, 405 U.S. 150, 153-54 (1972)).  The remaining two documents, which are denominated the "Perazzo Letters," were not filed by any party or introduced as evidence during the SWK trial.  Id. at *4.[1]  The Perazzo Letters were mailed anonymously to Judge Kram and she filed them under seal without reading them.  Id.  The Government represents that "[n]one of the three documents that the Government argued should remain sealed appears to involve" the witness who testified in the Racketeering trial and who, as described below, DiPietro now argues he was entitled to impeach with the putative newly discovered evidence that underpins this motion.

While DiPietro's appeal in the Racketeering case was pending, he filed this second Rule 33 motion.  The motion is

---

[1] Perazzo was the principal victim of the crimes charged in the SWK case.

dated and post-marked January 2, 2009.  It was received in this
Court's Chambers on January 5 and docketed on January 23.  The
motion identifies three grounds for relief:  (1) recently
discovered materials regarding a trial witness's cooperation and
past relationship with the Westchester District Attorney's
Office; (2) exculpatory information in New York State Police
Reports; and (3) a purported secret docketing scheme in the SWK
case.

In the January 2 motion, DiPietro requested permission to
file a brief in support of the motion by February 4.  The
application was granted, and a twenty-one page brief and
attachments were received by this Court in early February.  The
Government responded with a memorandum in opposition on March
18.  DiPietro submitted an April 10 reply, and a June 10 letter
in further support of his motion.


                           DISCUSSION
DiPietro's Rule 33 motion raises four issues.  The
Government contends that the motion is untimely, that none of
the evidence described by DiPietro is newly discovered evidence,
and that none of the evidence described by DiPietro warrants a
new trial.

Rule 33 states that "[u]pon the defendant's motion, the
court may vacate any judgment and grant a new trial if the

                                5

interest of justice so requires." Fed. R. Crim. P. 33(a).  If
the motion is grounded on any reason other than "newly
discovered evidence," the motion must be filed within 7 days
after the verdict or finding of guilty.  Fed. R. Crim. P.
33(b)(2).  If the motion for a new trial is grounded on newly
discovered evidence, it "must be filed within 3 years after the
verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1).  If
an appeal of the conviction is pending, a new trial may not be
granted until the appellate court remands the case.  Id.

A Rule 33 motion is to be granted "sparingly" and only in
"exceptional circumstances." United States v. Bell, -- F.3d --,
2009 WL 3353084, at *4 (2d Cir. Oct. 20, 2009) (citing United
States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992)).  "The
test is whether it would be a manifest injustice to let the
guilty verdict stand." Id.  A new trial pursuant to Rule 33
based on "newly discovered evidence" may be granted "only upon a
showing that the evidence could not with due diligence have been
discovered before or during trial, that the evidence is
material, not cumulative, and that admission of the evidence
would probably lead to an acquittal." United States v. Owen,
500 F.3d 83, 87 (2d Cir. 2007) (citation omitted).  Ordinarily,
evidence that merely adds additional grounds to impeach a
Government's trial witness, does not satisfy this standard.  See
United States v. Spinelli, 551 F.3d 159, 165 (2d Cir. 2008).

6

1.   Timeliness of Filing

     The Government first contends that DiPietro's motion for a
new trial is untimely because it was filed more than three years
after the jury returned its verdict in the Racketeering trial on
January 4, 2006.  DiPietro's motion is timely since it was post-
marked on January 2, 2009, two days before the expiration of the
three-year period for filing a Rule 33 motion based on newly
discovered evidence.  As a result, the merits of the motion will
be addressed.

2.   Sealed Documents in SWK Case

     DiPietro argues that he did not have access to sealed
documents from the SWK case at the time he cross-examined
Marizio Sanginiti (the "Witness"), a Government witness in the
Racketeering trial, and was thereby deprived of important
impeachment material.  The Government asserts that
notwithstanding the sealed status of the documents in the SWK
case, prior to the trials in both the SWK and Racketeering
cases, "all documents that constituted Jencks Act material" for
the Witness were provided to DiPietro and his co-defendants.
The Government also argues that the existence of the sealed
documents in the SWK case has been known to DiPietro since 2005
and that their unsealing by Judge Kram does not render them
"newly discovered."

DiPietro has not shown that he is entitled to a new trial based on the previously sealed documents in the SWK case.  He has not shown that the Government failed to provide any Jencks Act material to his attorney before the Witness was cross-examined during the Racketeering trial, including any material then filed under seal in the SWK case.  Moreover, as the Government correctly points out, the documents were filed under seal in the SWK case even before the Racketeering trial began.  As such, the documents that were subsequently unsealed do not constitute "newly discovered" evidence.  See Owen, 500 F.3d at 89 (distinguishing between "newly discovered" and "newly available" evidence and holding that only the former supports a Rule 33 motion).

As described above, on March 18, 2009, Judge Kram unsealed all but three of the documents filed in the SWK case.  Despite that massive unsealing, DiPietro cannot point to any document which should have been, but was not, disclosed as Jencks Act material in the Racketeering case.  DiPietro argues in his June 10, 2009 letter that an April 22, 2005 order signed by the Part I Judge on behalf of Judge Kram may be evidence that the Government failed to disclose Jenks Act material contained in documents that were once filed under seal in the SWK case.  The April 22, 2005 order permitted the FBI to remove the Witness from the Metropolitan Correctional Center on nights, holidays,

and weekends between April 22 and June 3, 2005.  This "take-out" order is customarily executed to permit prosecutors to interview and prepare an incarcerated cooperating witness in connection with his trial testimony.  The SWK trial began in May and ended on July 12, 2005, a period that overlaps with the dates specified in the take-out order.

In sum, DiPietro fails to show that any of the documents previously filed under seal in the SWK case constitutes either newly discovered evidence or impeachment material for the Witness which the Government should have, but did not, provide him during the Racketeering trial.

3.   Allegation that Witness Committed Statutory Rape

DiPietro argues that the Government intentionally withheld information that could have been used to impeach the Witness in violation of Brady v. Maryland, 373 U.S. 83 (1963), namely an allegation that the Witness had committed statutory rape.  This allegation was relayed to the Government by counsel for one of DiPietro's co-defendants during the SWK trial, and DiPietro asserts that the Government should have disclosed it to him at the time of the Racketeering trial so that he could use it to cross-examine the Witness.

This claim apparently arises from the following events. The Government disclosed to defense counsel in both the SWK trial and the Racketeering trial that the Witness had engaged in

extramarital affairs and had used prostitutes.  Because any
testimony about the use of prostitutes would also tend to
disclose that DiPietro and some of his co-defendants had also
solicited prostitutes, all defense counsel in both trials agreed
to refrain from cross-examining the Witness about these matters,
with one exception.  Mr. William Aronwald, counsel for defendant
Angelo Capalbo in the SWK trial, sought permission in an ex
parte proceeding before Judge Kram on May 10, 2005 to confront
the Witness with the fact that the Witness had been caught
having sex with a sixteen-year-old relative.[2]  Judge Kram denied
the request and in an Order dated May 18, 2005 instructed
counsel that no references to the Witness's alleged involvement
in any illicit sexual activity could be solicited during his
cross-examination.  The unsealed transcripts also indicate that
Judge Kram denied again Mr. Aronwald's request to use the
allegation of statutory rape to impeach the Witness during a
side-bar conference at the SWK trial on May 23, 2005.

    DiPietro represents that Mr. Joseph Bondy, his trial
counsel in the SWK trial, was unaware of Mr. Aronwald's
allegation that the Witness had committed statutory rape.
Further, the Government did not disclose to defense counsel in
the Racketeering trial that Mr. Aronwald had made this

---

[2] The Government asserts that it has no knowledge of any
complaint or charge related to this allegation of statutory rape
ever being filed against the Witness.

accusation against the Witness.  DiPietro asserts that the
sealed <u>ex</u> <u>parte</u> proceedings before Judge Kram in the SWK case
regarding this issue were first made available to him on
November 2, 2006.[3]

Even assuming that this allegation of statutory rape
constitutes newly discovered evidence, DiPietro has not shown
that it would have been an appropriate subject for impeachment
of the Witness during the Racketeering trial.  While it is the
general practice in this district for the prosecutor to disclose
a cooperator's prior bad acts to defense counsel prior to the
cooperator's testimony at trial, it is far from clear that
either <u>Brady</u>, 373 U.S. 83, or <u>Giglio</u>, 405 U.S. 150, or their
progeny would require the disclosure of this allegation, which
involved no arrest, prosecution, or false statement, and which
was unconnected to the events at issue in the Racketeering
trial.  It is even less likely that this Court would have
permitted the Witness to be cross-examined at the Racketeering
trial about this allegation, which does not shed any light on

---

[3] The contents of the sealed transcripts concerning the
allegation of statutory rape were known to Mr. Aronwald in May
2005, since he was the person who brought the allegation to
Judge Kram's attention.  Mr. Aronwald became DiPietro's counsel
in his appeal of his conviction in the SWK case, which was filed
in June 2006.  As soon as Mr. Aronwald undertook the
representation of DiPietro, DiPietro was in a position to know
of the allegation concerning statutory rape.

the Witness' credibility and which could unfairly inflame the
passions of the jury against him.  See Rule 403, Fed. R. Evid.

Finally, there is no basis to find that the disclosure of
this allegation would have led to an acquittal of DiPietro on
the charges on which he was convicted.  The Government's
evidence was based on many different sources, including the
testimony of investigating officers, various cooperating
witnesses and victims, consensual tape recordings, recorded
conversations from wiretaps of telephones belonging to DiPietro
and his co-defendants, as well as physical evidence seized
during various searches.

DiPietro argues that the cross-examination of the Witness
regarding the statutory rape allegation would have placed the
Witness "in an extremely different light and provided the jury
with an acute view into his veracity, biases, and motivations."
DiPietro argues as well that the federal prosecutor's failure to
disclose the allegation to state law enforcement authorities
allowed the Witness to escape punishment for this serious crime,
and explains the Witness's willingness to say anything that the
Government would find helpful.  As already explained, this
allegation has little to do with an assessment of the Witness's
credibility.  As for the Government's obligation to refer the
Witness to the state authorities for prosecution or the
motivation of the Witness to assist the Government, DiPietro has

failed to show that the allegation was sufficiently reliable to trigger any duty to investigate it further or to explain the Witness's motivations.

4.   New York State Police Reports

DiPietro contends that certain New York State Police Reports (the "Reports") support his contention that he withdrew from the Rudaj Organization in 2002, and thus it was error to admit at trial the co-conspirator statements made after 2002 against him.  DiPietro argues that none of the Reports, the last of which is apparently dated September 19, 2003, describe his continued involvement in the Rudaj Organization after he was fired in 2002, and therefore the Reports are exculpatory. DiPietro also argues that the Reports support his argument that the events at Calda's Bar, which were at issue in the Racketeering trial, suggest at most the use of coercion, but not the crime of extortion on which his conviction was based.[4]

The Government argues that the Reports were provided to DiPietro and his co-defendants during the SWK trial as Jencks Act material for trial witness Investigator Steve Hegarty.  The

---

[4] Evidence at trial showed that members of the Rudaj Organization, including DiPietro, attempted to force the owner of Calda's Bar in Mount Vernon, New York, to take the Organization's gambling machines.  On February 28, 2002, DiPietro threatened to throw the existing machines at Calda's Bar out of the bar.

Government adds that, in any event, the Reports do not assist DiPietro's arguments in support of a new trial.

First, as the Government correctly points out, the Reports were made available to DiPietro's counsel in connection with the SWK trial, and therefore were available to DiPietro during the Racketeering trial. DiPietro argues that the Government had a duty to disclose the Reports in connection with the Racketeering trial and cannot excuse its failure by pointing out that they were produced to him in connection with the SWK trial. DiPietro argues that it is particularly unfair to rely on that prior disclosure since he was incarcerated during both trials and was represented by separate counsel in the two trials. This argument is without merit. Mr. Bondy appeared on behalf of Mr. DiPietro in both cases. Moreover, all materials made available to Mr. Bondy were equally available to Mr. Martin Geduldig, who took over for Mr. Bondy as DiPietro's counsel in the Racketeering case. See United States v. DiPietro, No. 04 Cr. 1110(DLC), 2007 WL 3120902, at *1-*2 (S.D.N.Y. Oct. 23, 2007).

Second, the Reports are entirely consistent with the evidence admitted during the Racketeering trial which demonstrated that DiPietro did not "withdraw" from the Rudaj Organization in the legal sense after he was fired for stealing in 2002. Evidence at trial showed that after DiPietro was fired, he opened his own gambling spot within the Organization's

14

"territory" and received the Organization's permission to do so. This Court evaluated DiPietro's withdrawal argument at trial and ruled that he had not withdrawn.  In his appeal of the Racketeering conviction, DiPietro specifically raised this withdrawal argument.  The Court of Appeals affirmed DiPietro's conviction without addressing this argument, thereby rejecting it <u>sub silentio</u>.  <u>See</u> <u>United States v. Ivezaj</u>, 2009 WL 1636018, at *3 ("We have considered the defendants' remaining contentions and find them to be without merit.").  The Reports do not alter the conclusion that DiPietro did not withdraw from the conspiracy.

Third, the discussion of the events at Calda's Bar contained in the Reports do not undermine the jury's finding of extortion.  The jury's verdict in the Racketeering case was based on the evidence presented at trial and the Court's instruction as to the governing legal principles, and has been affirmed on appeal.  <u>See</u> <u>Ivezaj</u>, 568 F.3d at 91-94.  In his Reply brief, DiPietro addresses this issue only in a footnote, which merely reiterates his conclusory argument that the Reports may have assisted his defense and could have supported a finding of coercion rather than extortion.  This argument is insufficient to support DiPietro's claim that the Reports are newly discovered evidence, much less that the Reports justify a new trial.

15

5.   Witness's Relationship with Westchester District Attorney

Finally, DiPietro argues that the Witness assisted the Westchester District Attorney's Office ("DA's Office") in certain prosecutions.  DiPietro seeks a court order requiring the DA's Office to disclose information regarding the extent and nature of the Witness' cooperation.  DiPietro points to the Witness' trial testimony about his connections to and receipt of information from the DA's Office, including a tip about the date on which he would be arrested by federal authorities.

This request is denied.  First of all, the material requested does not represent newly discovered evidence.  As DiPietro's memorandum describes, the Witness testified at the Racketeering trial regarding his relationship with the DA's Office.  If there were any reason to believe that the Government had not fulfilled its disclosure obligations to defense counsel regarding that relationship, DiPietro had an opportunity to raise the issue with the Court at that time.  Moreover, DiPietro has not shown that the Government violated any disclosure obligations regarding the Witness.  Finally, DiPietro has not shown that any admissible information regarding the Witness' relationship with a local prosecutor's office would lead to DiPietro's acquittal.

CONCLUSION

For the foregoing reasons, Angelo DiPietro's January 2,
2009 motion for a new trial is denied.


SO ORDERED:

Dated:    New York, New York
          November 6, 2009

                                  _____
                                       DENISE COTE
                                  United States District Judge